## PALMER *v.* THE STATE.

It is no ground for a new trial in a capital case that the jury, while the trial was going on, in taking a ride for exercise by permission of the court under the charge of officers, were driven by or near the place of the murder (a view having been taken earlier in the trial) when it appears that no view or examination was made of any locality connected with the trial, nor any allusion to the trial or the evidence in the case, by any one.

CLARK, J.   This is a petition for a new trial in a capital case, on the ground that one of the jurors had formed an opinion of the guilt of the petitioner before hearing any evidence and was prejudiced and incompetent to sit upon the trial, and because the jury improperly had a view of the locality where the murder was committed, without the order of the court and without the knowledge of the petitioner or his counsel.   The matters alleged as reasons for a new trial were not known to the petitioner or his counsel until a short time before the filing of the petition.   The petition was presented at the fourth term after judgment, and adjourned into the law term for a hearing of all questions of law and fact.

In support of the first ground upon which the application for a new trial is based, the petitioner has introduced the evidence of five witnesses, tending to show that Samuel P. Eaton, the foreman of the jury by whom the petitioner was tried, had said in substance, at different times after the trial, that the moment he set his eyes on Palmer he made up his mind that he was guilty,— that he was satisfied from his appearance that he was a villain and a guilty man; and that on one or more occasions he added that all the evidence in the world would not change his opinion.

Under the general rule resting upon grounds of public policy, that the testimony of jurors is not admissible to impeach their ver-

dict (*Knight* v. *Epsom*, 62 N..H. 356) this evidence would not be received. If the testimony of a juror is not admissible to impeach the verdict, evidence of his declarations cannot be received for that purpose. But, following the precedent of *Buzzell* v. *The State*, 59 N. H. 61, in the mode of procedure and the broad principles of equity and justice there adopted, the ordinary rule has been waived in favor of the petitioner, and the evidence has been received and considered.

The state has introduced the testimony of Eaton, who denies having made the statements testified to by some of the witnesses, and says that he does not recollect making such statements to any one at any time; that he never saw the petitioner before he saw him in the court-room on the day before the jury was impanelled; that he had no bias, prejudice, or malice against him when he was called, examined, and sworn as a juror, and had not then formed any opinion as to his guilt or innocence, and that he did not come to a decision of that question until after hearing all the evidence produced at the trial. The stenographer's minutes of Eaton's examination prior to his being sworn as a juror have also been furnished. In addition to the testimony of Eaton, there has been produced the testimony of other jurors and of the officers in charge of the jury, tending to show that his conduct and acts during the trial were inconsistent with a feeling of prejudice or bias against the petitioner. This evidence was excepted to, but it was clearly admissible. It was conceded that Eaton's testimony as to his conduct was admissible, upon the authority of *State* v. *Howard*, 17 N. H. 171, and if it was competent to prove the facts by Eaton, it was competent to prove them by any parties having knowledge of the facts. In *Tenney* v. *Evans*, 13 N. H. 462, 465, *Gilchrist*, J., says,—" We have therefore read and considered the affidavit of the foreman, in connection with the other evidence; and also the affidavit of one of the jurors in relation to the foreman's conduct in the jury room, as it corroborates the statement of the foreman, is in exculpation of him, and tends to support the verdict. There seems to be no reason why he should not be permitted to rebut the charge of partiality by his own evidence, tending to show that his acts were inconsistent with the existence of such a feeling; and if he may do this, he may surely offer evidence in corroboration of his statements from one who knows whether those statements are true."

All the other jurors upon the panel but one have been called, and testified that the foreman, Eaton, at the commencement of the trial, advised the jurors not to discuss the evidence during the trial, nor express their opinion until the case was submitted to them; and that when the jury retired to deliberate upon their verdict he suggested that a ballot be taken before any discussion to ascertain the views of the jurors, which was done by the use of written ballots. They observed nothing in his conduct during the trial show-

ing any partiality or prejudice, or in any way indicating his opinion as to the guilt or innocence of the prisoner, or whether his vote would be for acquittal or conviction. The officers in charge of the jury saw nothing in Eaton's conduct during the trial in any way indicating an opinion.

Upon the case presented, the inquiry is, whether Eaton stood indifferent when sworn as a juror. A careful consideration of all the evidence produced leaves us in no uncertainty upon this point. The weight of the evidence of loose and inconsiderate expressions in careless conversations after the trial, lessened by the uncertainty of understanding and recollection of the hearers after the lapse of time, is too slight to raise a reasonable doubt of Eaton's impartiality when sworn as a juror, as shown by his examination under oath at that time and by his conduct during the trial. Assuming the recollection of the witnesses introduced by the petitioner to be entirely accurate, and that Eaton used the exact words attributed to him in speaking of the trial some time afterwards under the circumstances stated, the language cannot be regarded otherwise than as intended and understood to be an extravagant and exaggerated description of the prisoner, and of the impression made by the legitimate evidence of his appearance and conduct during the trial.

The allegation in the petition that the jury during the trial, without authority from the court and without the knowledge of the petitioner or his counsel, took a second view and made an examination of the locality where the murder was committed, is not supported by any evidence. It appears that during a recess in the trial, the jury, by permission of the court, were allowed to visit the navy-yard at Kittery in charge of two deputy sheriffs, and that in going and returning they were necessarily driven over the bridge connecting Portsmouth and Kittery, and by or near the place of the murder; but it appears from the testimony of the jurors and the officers in charge that no view or examination was made of any locality connected with the trial, nor any allusion to the trial or the evidence in the case, by any one.

This comprises the evidence presented upon the petition. A suggestion of the state's counsel, that they were prepared to introduce new evidence upon the question of the petitioner's guilt discovered since the trial, was dismissed without considering the question of its competency as having no bearing upon the question now presented. A new trial is not asked for on the ground that the verdict of the jury was against the weight of the evidence, or that the evidence did not warrant a verdict of guilty, or because of newly discovered evidence tending to show that the prisoner's conviction was wrongful. All questions raised on the trial as to the admissibility of evidence have been determined upon a former consideration of the case. Upon the evidence submitted in support of the petition for a new trial, we entertain no doubt as to the

impartiality of the jury, the fairness of the trial, or the justice of the verdict.

*Petition denied.*

CARPENTER, J., was absent: the others concurred.

·G. *Marston* and *C. Page*, for the petitioner.

*D. Barnard*, attorney-general, and *S. W. Emery*, solicitor, for the state.